**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

CREWS & ASSOCIATES, INC., an Arkansas
Corporation                                                          PLAINTIFF

vs.                                          NO. 4:10-CV-1098-GTE

NUVEEN HIGH YIELD MUNICIPAL BOND FUND,
a series of the Nuveen Municipal Trust, a Massachusetts
business trust, *et al.*                                            DEFENDANTS

**CREWS & ASSOCIATES, INC.'S MEMORANDUM IN**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Crews & Associates, Inc. ("Crews"), through undersigned counsel, respectfully

submits this memorandum in opposition to the defendants' motion to dismiss.  Because there is both

federal question and subject-matter jurisdiction over this action, the defendants' motion should be

denied.

I.       **INTRODUCTION**

Crews filed this declaratory judgment action to resolve allegations made by the defendants

that it committed securities fraud.  Crews is an Arkansas-based underwriting and investment banking

firm which acted as the underwriter for and/or placement agent of certain bonds purchased in 2006

and 2007 by the defendants, a group of sophisticated investor bond funds organized under the laws

of Massachusetts and a California insurance company (collectively referred to as "Nuveen").

Nuveen has accused Crews of making false and misleading statements and omitting material facts

from offering statements in connection with the bonds and notes purchased by Nuveen.  There is,

thus, an actual controversy between the parties, as Crews denies any violations of applicable

securities law and all liability for any alleged damages Nuveen asserts it has sustained as a result of

its purchase of the bonds.

## II.   BACKGROUND

### A.   Factual Background

As outlined in Crews' Complaint, the parties' dispute arises out of a golf community development project by the name of Carter Plantation, located in Livingston Parish, Louisiana.[1]   The development, in which Nuveen was involved as an investor long before Crews was asked to participate in any transactions, featured a signature golf course designed by champion golfer David Toms and was to be a Louisiana landmark.[2]   The 550-acre development was to include the golf course, a hotel, conference center, residential lots, and vacation villas.[3]

The financing of the costs of Carter Plantation's infrastructure, construction, development, and improvements was to be accomplished largely through the formation of Louisiana Community Development Districts, which would authorize and issue municipal bonds to be sold.[4]   Nuveen got involved during the development's early stages and purchased millions in bonds in 2004, before Crews was involved.[5]   Crews was asked to participate as an underwriter for the first time in a 2005 transaction, in which Nuveen purchased $16 million more in bonds.[6]   In 2006 and 2007, Crews was again asked to participate as the placement agent and/or underwriter for multiple series of municipal bonds, Gulf Opportunity Zone bonds, and a series of notes, all of which were purchased by Nuveen in connection with the financing of Carter Plantation.[7]

---

[1] Complaint, at ¶ 11.
[2] *Id.*
[3] *Id.* at ¶ 12.
[4] *Id.* at ¶ 13.
[5] *Id.* at ¶ 14.
[6] *Id.* at ¶ 15.
[7] Complaint, at ¶ 22.

In or around November 2008, the developer of Carter Plantation advised Nuveen that it was having difficulty meeting its financial obligations and that it did not appear it could finish the project.[8]  Notably, this was around the time the nation's financial and real estate markets were spiraling downward.  In late 2008, Nuveen contacted Crews about acting as the underwriter for it to sell certain of the Carter Plantation bonds in December 2008 for a fraction of their purchase price.[9] Crews did not hear from Nuveen again with respect to the bonds at issue until September 2009, when Nuveen provided written notice under Illinois law that it believed it was entitled to rescind the purchase of all the bonds.[10]  Crews denied that rescission was proper.  As alleged, Nuveen had intimate knowledge of Carter Plantation's developer and its finances, and Crews hid nothing from Nuveen throughout the duration of its involvement in the financing transactions.  Crews did not hear from Nuveen again until Nuveen filed suit in 2010.

### B.  Procedural Background

On June 7, 2010, Nuveen filed suit in this very Court for securities fraud against Crews, its parent company, its officers and directors, and one of its employees with respect to the 2006 and 2007 transactions.[11]  The complaint made broad factual allegations of wrongdoing in connection with Crews' involvement in the transactions in which Nuveen purchased the 2006 Hotel Bonds, 2007 Taxable Notes, and 2007 Marina Bonds.  Notably, although filed in federal court, Nuveen only pleaded claims under the securities laws of Arkansas, Louisiana, and Illinois.  A close review of the complaint revealed that Nuveen's allegations, at best, were for alleged negligence under those three

---

[8] *Id.* at ¶ 23.
[9] Nuveen's federal complaint in Action No. 10-548, attached as Exhibit 1 to its memorandum in support of motion to dismiss, at ¶ 185.
[10] *Id.* at ¶ 189.
[11] Complaint, at ¶ 189.

states' laws.  Nuveen apparently intended to by-pass strict federal pleading requirements with respect to alleging fraud in the offer or sale of interstate securities transactions like those at issue.[12] Crews was poised to bring to this Court's attention the fatal mistakes made by Nuveen in attempting to avoid federal law by asserting only state-based negligence claims with respect to these interstate transactions on grounds of federal preemption and U.S. Commerce Clause violations, but Nuveen suddenly non-suited its federal case on July 29, 2010, the day before Crews' responsive pleadings were due.[13]

Crews quickly discovered that Nuveen was forum-shopping its case, as, within hours of dismissing its federal complaint, it re-filed the same complaint in Arkansas state court.[14]  With no end in sight to the baseless accusations of fraud and in response to Nuveen's apparent forum shopping, Crews filed this declaratory judgment action on July 30, 2010, advising the Court that this matter is related to Nuveen's first complaint.[15]  In its Complaint for Declaratory Judgment, Crews seeks to resolve *all allegations* by Nuveen that it committed any type of securities fraud, whether under federal law, Arkansas law, Illinois law, Louisiana law, or any other state's law under which Nuveen may decide to attempt to sue with respect to the subject transactions.

Since the filing of this action, Crews has properly served all five of the defendants herein. Nuveen, on the other hand, is still attempting to accomplish proper service of its state-court complaint on the individual defendants named therein, and a motion to dismiss for insufficient

---

[12] Nuveen invoked diversity jurisdiction over the parties in that first complaint.

[13] *See* Plaintiffs' Notice of Voluntary Dismissal Without Prejudice, attached hereto as Exhibit A.

[14] Nuveen's state-court complaint is attached as Exhibit 2 to its memorandum in support of motion to dismiss.

[15] The Court agreed it was properly filed as a related case on August 24, 2010.  Rec. Doc. No. 12.

service of process is pending in that action.[16]   Of more import to this Court is that Crews has also

filed in the state-court action: (1) a motion to dismiss Nuveen's state-law claims on the grounds that

the three states' securities laws invoked by Nuveen are preempted by federal law and run afoul of

the Commerce Clause of the U.S. Constitution if applied to interstate securities transactions like the

ones at issue,[17] and (2) a motion to stay the state-court proceedings pending this Court's resolution

of the critical issues of federal law implicated by Nuveen's claims.[18]   Under Arkansas state law, this

Court is entitled to deference as between the two proceedings because it is the first in which all

parties have been properly served.[19]   Crews' motions have not yet been set for hearing by the state

court.

         As detailed below, Nuveen's motion to dismiss Crews' declaratory judgment complaint in

favor of its state-court action is misguided.  First, there is clearly a ripe controversy between the

parties, and Crews is entitled to invoke the federal Declaratory Judgment Act to resolve not only the

claims of securities fraud attempted under state law, but all potential claims by Nuveen of securities

fraud based on the same transactions.  Second, because Crews seeks a declaration that it is not liable

to Nuveen under federal securities law, this Court has federal question jurisdiction over the action.

The Court also has subject-matter jurisdiction, because there is complete diversity of citizenship

among the parties.  Last, the relevant factors weigh in favor of this Court's exercising its jurisdiction

to render a declaratory judgment, especially given that there are substantive issues of federal law that

must be decided at the outset before Nuveen can proceed with its purported state-law negligence

---

[16] Individual Defendants' Motion to Dismiss, Ex. B.

[17] Crews' Motion to Dismiss with Memorandum in Support, Ex. C.

[18] Crews' Motion to Stay with Memorandum in Support, Ex. D.

[19] *See Allen v. Circuit Court of Pulaski County, Ninth Division*, 303 S.W.3d 70, 76-77 (2009); *Shotzman v. Berumen*, 213 S.W.3d 13, 19 (2005).

claims in any court: (1) whether the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), preempts the three states' blue-sky laws when applied to nationally-exchanged securities, and (2) whether the three states' laws violate the Commerce Clause when applied to interstate securities transactions.

## III.   LAW AND ARGUMENT

### A.   Crews properly invoked the federal declaratory judgment act.

Contrary to Nuveen's motion to dismiss, there is no rule against bringing a declaratory judgment action to resolve disputes over whether a party has violated a securities law. The test for an actual controversy is whether "there is substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941). That test applies in cases involving allegations of securities fraud and is clearly met here. Nuveen has already filed suit twice based on the subject transactions, and Crews has every reason to believe that it may sue again in a different forum under a different law if such a maneuver were to appear advantageous.

Notwithstanding Nuveen's contention that "[a] declaratory judgment action is not properly used to decide run-of-the-mill negligence claims," at issue here are not negligence-based, tort-type claims. As discussed and as evidenced on the face of both Crews' and Nuveen's complaints, this is a dispute over whether Crews is liable under federal or state law for securities fraud in its role as underwriter and/or placement agent for the Hotel Bonds, Taxable Notes, and Marina Bonds. Nuveen has alleged in multiple court filings now that Crews made false and misleading statements and omitted material facts from the offering statements for those three sets of securities purchased by Nuveen. Such allegations are routine in both federal and state securities-fraud actions. Nuveen's

decision, to date, not to sue directly under the Exchange Act for a federal violation in lieu of attempting to recover under less stringent state laws, does not defeat Crews' entitlement to seek a declaratory judgment regarding any possible future federal claims Nuveen may seek to bring with respect to these same transactions.

"One purpose of the declaratory judgment procedure is to allow a party to anticipate an action that would be brought against it." *Kansas City Power & Light Co. v. Kansas Gas and Electric Co.*, 747 F. Supp. 567, 572 (W.D.Mo. 1990) (citing *Gulf States Paper Corp. v. Ingram*, 811 F.2d 1464, 1467 (11th Cir. 1987)). "If a declaratory judgment defendant could have brought an action in federal court to enforce its rights, then the federal court has jurisdiction over the declaratory judgment action brought by the plaintiff." *Id.* (Citing *Janakes v. U.S. Postal Service*, 768 F.2d 1091, 1093 (9th Cir. 1985)).

The case of *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir. 1991) is directly on point. In that case, an investment bank (Kidder Peabody), was advised by a former client (Maxus Energy) that it intended to file suit against the bank arising out of a securities transaction at the end of a ten-day "stand-still" agreement into which the parties had entered. *Id.* at 559. On the day the stand-still agreement expired, Maxus Energy filed an action in Texas state court alleging state-law securities, fraud, and negligence claims. A couple of hours later, on the same day, Kidder filed a declaratory judgment action in federal court seeking a declaration that it had not violated sections 10(b) or 14(e) of the Exchange Act. *Id.* Maxus Energy moved to dismiss the declaratory judgment action on grounds similar to those raised by Nuveen herein. Unlike this case, however, Maxus Energy represented to the federal court that it would never assert any claims against Kidder under sections 10(b) or 14(e) with respect to the transaction at issue. *Id.* at 560. The district

court denied the motion to dismiss, finding that it had a live controversy before it, and ultimately declared that Kidder was not liable under the Exchange Act. *Id.* at 562.

The Second Circuit affirmed the district court's ruling, explaining that, at all times an actual controversy existed between the parties regarding whether Kidder had violated any laws with respect to the disputed transaction, the real threat of litigation by Maxus Energy provided a proper basis for Kidder to file the declaratory judgment action, and Maxus Energy's representation that it would not assert a federal securities claim did not deprive the district court of jurisdiction over the matter. *Kidder*, 925 F.2d at 562-63.[20] *See also Carlin Equities Corp. v. Offman*, No. Civ.A. 07-359, 2007 WL 2388909 (S.D.N.Y. Aug. 21, 2007) (following *Kidder* and holding that declaratory judgment action brought to declare that plaintiffs had not violated any federal securities laws in transaction was proper even though defendant represented that it did not intend to sue under the federal securities law); *Kansas City Power & Light*, *supra* (denying motion to dismiss declaratory judgment action where a Missouri electric utility company sought a declaration that its tender offer filing complied with certain federal securities laws despite that the declaratory judgment defendant had made a claim in a different court challenging the filing under a different section of the securities laws because an actual controversy and legal uncertainty existed).

Similarly, here, Crews reasonably anticipates that Nuveen's allegations could lead to a federal securities law claim or other purported state-law claims. Moreover, Nuveen would have to bring any federal action in federal court based on the exclusive jurisdiction provision of the

---

[20] The Second Circuit reversed the district court's enjoining Maxus Energy from pursuing its state-law claims in Texas state court, finding that the district court should have honored Maxus Energy's choice of forum for those claims. *Id.* at 563-64. The case is unlike the instant one in that there was no argument by Kidder that the state laws at issue were preempted or otherwise unconstitutional.

Exchange Act,[21] and could bring any other state-law claims in this Court based on diversity (as it did in the first instance). Accordingly, this action was properly filed in this Court.

Finally, declaratory judgment actions are also commonly brought to challenge state laws as federally preempted. *See*, *e.g.*, *Self-Insurance Institute of America, Inc. v. Korioth*, 993 F.2d 479, 483 (5th Cir. 1993) (finding that federal question jurisdiction existed over complaint for declaratory judgment to declare Texas insurance code preempted by ERISA and to enjoin its enforcement because "[t]he question of preemption is particularly one for the federal courts and arises as much from the Constitution as from ERISA"); *Stone & Webster Eng'g Corp.*, 690 F.2d 323 (2d Cir. 1982) (seeking injunctive relief and declaratory judgment that state statute requiring employer to provide health and life insurance coverage for a former employee currently receiving workers' compensation was preempted by the Employee Retirement Income Security Act of 1974); *Associated Builders & Contractors, Inc. v. Foley*, 37 F.3d 945 (3d Cir. 1994) (challenging Pennsylvania Prevailing Wage Act as preempted by Employee Retirement Income Security Act); *National Labor Relations Board v. North Dakota*, 504 F. Supp. 2d 750 (D.N.D. 2007) (concluding that jurisdiction existed over declaratory judgment complaint to determine whether a North Dakota statute was preempted by the National Labor Relations Act).

In sum, Crews is not asking for any novel relief or treatment by invoking the Declaratory Judgment Act to resolve these parties' actual controversy.

---

[21] 15 U.S.C. § 78aa ("The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States *shall have exclusive jurisdiction* of violations of this chapter or the rules and regulations thereunder, *and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.*") (Emphasis added).

**B.**     <u>A federal question exists.</u>

    *1.*     *Crews has requested relief arising under federal securities law.*

A federal question exists where a complaint clearly implicates federal law.  28 U.S.C. §

1331.  Nuveen relies heavily on the well-pleaded complaint rule to argue that there is no federal

question presented in its state-court pleading.  Nuveen's analysis is misguided though, as the Court

must look to the Complaint at issue in this action to determine whether a federal question exists.

And, the Complaint in this action brought by Crews undoubtedly presents a request for declaratory

judgment that Crews is not liable under the federal securities law or any state's law.

    Nuveen is careful to assert that only state securities laws are at issue *in its parallel pending*

*state-court complaint*.   Yet, nowhere in the two complaints filed so far, or in its motion to dismiss,

does Nuveen exculpate Crews from a federal securities law violation or represent that it has no

intention of suing under federal law.[22]   The fact that Nuveen has <u>thus far</u> chosen not to assert any

claims it may believe it has under the federal securities laws there is no actual controversy regarding

whether Crews violated federal law.  Regardless of Nuveen's attempt to limit its current state court

lawsuit to claims under Arkansas, Louisiana, and Illinois state securities laws, there is nothing to

prevent Nuveen from also attempting a federal claim or claim under some other state's law.[23]  Given

Nuveen's erratic behavior throughout this dispute, it is not unreasonable to suspect that Nuveen very

---

[22] Although, under the rationale of *Kidder*, *supra*, any such representation would not necessarily moot the controversy between the parties and would not divest the Court of jurisdiction.

[23] Nuveen arguably could bring a federal action against Crews anytime within the applicable statute of limitations.   *See Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, 544 U.S. 280, 292,, 125 S. Ct. 1517, 1527-27 (2005) ("This Court has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'")  The state-court suit would not have any preclusive effect on such a federal case unless and until a final judgment was reached in the state court action.

well may attempt a federal suit in a different federal court.   It is precisely this type of legal uncertainty arising from a real dispute that declaratory judgments are meant to prevent.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72, 70 S. Ct. 876, 879 (1950) ("The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right *even though no immediate enforcement of it was asked*.") (Emphasis added and internal citations omitted).

Nuveen claims that Crews has no right to have a federal court determine whether it is liable under federal securities law.   To reach this conclusion, Nuveen relies heavily on *Caterpillar* and *Central Iowa Power Co-op*.   Those cases, however, do not arise from declaratory judgment complaints, but address whether removal of an action from state court was proper.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S. Ct. 2425 (1987); *Central Iowa Power Co-op v. Midwest Independent Transmission System Operator, Inc.*, 561 F.3d 904 (8th Cir. 2009).  Unlike the facts of those cases, Crews has not removed Nuveen's state-court action by "injecting" a federal question into otherwise state-law claims; rather, it has filed its own complaint in federal court seeking a declaratory judgment as to whether Nuveen's allegations give rise to any liability on Crews' part under federal or any state's law.  The cases relied on by Nuveen do not change that Crews is entitled to seek that relief.

Nuveen has sued Crews twice so far with respect to these multiple interstate securities transactions.  Although it has not invoked the federal securities laws as yet, there is certainly no reason, in light of its past maneuverings, to believe that Nuveen does not contend that Crews has committed federal securities fraud in addition to the asserted state-law violations.  And, Nuveen has not stated that it does not intend to sue Crews under the federal securities law for these same transactions.  Accordingly, Crews has properly invoked the Court's exclusive jurisdiction under the

Exchange Act to resolve the question of whether Crews is liable for any Section 10(b) or Rule 10b-5 violation with respect to the transactions in question.[24]  *See* 15 U.S.C. § 78aa.

### 2. *Crews' request for relief with respect to state law also requires resolution of substantial questions of federal law.*

Crews' Complaint also seeks a declaration that it is not liable to Nuveen under any state's securities law.[25]  As noted, to date, Nuveen has invoked the blue-sky laws of Arkansas, Illinois, and Louisiana because those three securities acts purport to apply to interstate transactions like those in which Nuveen and Crews were involved, but appear to provide a lesser standard of liability than does federal law.  Because the three states' securities laws that currently are at issue conflict with federal securities law and purport to regulate interstate commerce, the laws are preempted and unconstitutional as applied to the transactions Nuveen has sued upon.  Crews has brought these constitutional defects to the state court's attention in a pending motion to dismiss, but has also asked the state court to stay that proceeding and defer to this Court's resolution of these critical questions of federal law, which are implicated by Nuveen's state-law negligence claims and, therefore, squarely at issue before this Court as well.

Crews' Complaint, thus, requires the adjudication of whether the three laws invoked by Nuveen are unconstitutional as applied to the transactions at issue for the reasons detailed in Crews' state-court motion to dismiss and below.  This Court has jurisdiction to adjudicate such substantial questions of federal law.  *See, e.g.*, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S. Ct. 243, 245, 65 L. Ed. 577 (1921) ("The general rule is that, where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the

---

[24] Complaint, at ¶ 32.  Nuveen claims that Crews has no right to have a federal court determine whether it violated federal securities law.
[25] *Id.*

Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction"); *Self-Insurance Institute of America, Inc. v. Korioth*, 993 F.2d 479, 483 (5th Cir. 1993) (finding that federal question jurisdiction existed over complaint for declaratory judgment to declare Texas insurance code preempted by ERISA and to enjoin its enforcement because "[t]he question of preemption is particularly one for the federal courts and arises as much from the Constitution as from ERISA"). [26]

> a.      **Crews' action requires a determination as to whether the three states' blue-sky laws are preempted.**

In response to a determination that the nation's securities markets were being harmed by frivolous and abusive private securities litigation in the early 1990's, Congress passed the Private Securities Litigation Reform of 1995 ("PSLRA"). *See* H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. 1995, 1995 U.S.C.C.A.N. 730 (1995). Congress enacted the PSLRA to reform the system, protect investors, and maintain confidence in the country's capital markets. *Id.* at 730. According to the House and Senate Committee of Conference, the PSLRA implemented "needed procedural protections to discourage frivolous litigation." *Id.* at 731.

---

[26] In *Koriath*, the declaratory judgment plaintiff sought injunctive relief in addition to a declaration of unconstitutionality under the Supremacy Clause, which brought the case squarely under *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96, n. 14, 103 S. Ct. 2890, 2899 (1983), in which the Supreme Court confirmed that "[a] plaintiff who seeks injunctive relief from a state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." Crews submits that the distinction is ultimately a meaningless one here and places form over substance. A declaration by this Court that the three states' laws invoked by Nuveen are unconstitutional under the Supremacy and Commerce Clauses of the U.S. Constitution when applied to interstate securities transactions like those at issue here would effectively result in Nuveen's being enjoined from proceeding against Crews under insufficient theories of negligence.

One of the key procedural protections of the PSLRA was the imposition of strict pleading standards regarding a named defendant's state of mind, as "[n]aming a party in a civil suit for fraud is a serious matter." H.R. Conf. Rep. No. 104-369, 1995 U.S.C.C.A.N. at 740. A claim based solely on alleged omissions of material fact must set forth facts supporting that a defendant knowingly concealed material information with the intent to defraud an investor or from which the Court can infer, at a minimum, "severe recklessness" on the defendant's part for not making the disclosure. Pursuant to the PSLRA, plaintiffs suing under federal law based on an alleged misstatement or omission in connection with the sale or purchase of securities must not only specify who made the fraudulent statement and when and where the statements were made, but must also plead facts that give rise to a "strong inference" of the defendant's intent to deceive, manipulate, defraud, or, alternatively, that the defendant acted with severe recklessness with respect to the truth of its representations. *See* 15 U.S.C. § 78u-4(b)(2). *See also Cornelia I. Crowell GST Trust v. Possis Medical, Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) (citing *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 893-94 (8th Cir. 2002)).

By 1998, it was clear to Congress that the purposes of the PSLRA were not being achieved, as securities-fraud plaintiffs were circumventing the new heightened pleading requirements and other requirements of the PSLRA by bringing suit in state court under state law rather than in federal court. *See* Pub. L. No. 105-353 §§ 2(1)-(5). According to the Senate Report on the Securities Litigation Uniform Standards Act ("SLUSA"), enacted in 1998, Congress was presented with evidence of a "disturbing trend" following enactment of the PSLRA "whereby plaintiff's counsel file state court complaints when the underlying facts appear not to satisfy new, stringent federal pleading requirements…." S. Rep. No. 182, 105th Cong., 2nd Sess. 1998, 1998 WL 226714, *3 (1998).

To address its concerns[27] and close the loophole in the PSLRA with respect to class actions, Congress passed SLUSA with the express purpose of "prevent[ing] State private securities class action lawsuits ... from being used to frustrate the objectives of the [PSLRA]," and "to enact national standards for securities class action lawsuits involving nationally traded securities...." Pub. L. No. 105-353 §§ 2(5).  Although SLUSA's expressly preemptive provisions were tailored to deal with class actions, the purpose of the legislation is as relevant to the issues before this Court as are those of the PSLRA.  According to the House Report, the purpose of SLUSA "is to prevent plaintiffs from seeking to evade protections that Federal law provides against abusive litigation by filing suit in State, rather than in Federal, court."  H.R. Conf. Rep. No. 803, 105th Cong., 2nd Sess. 1998, 1998 WL 703964, *13 (1998).  The legislation was designed to protect the interests of shareholders and employees of companies that become the targets of meritless suits under state law and to end the exploitation by plaintiffs' lawyers of the differences between Federal and State laws.  *Id.* at *13, *15-*16.

---

[27] During the hearings on the enactment of SLUSA, Congress was particularly concerned about and recognized the dangers of maintaining differing federal and state standards of liability for nationally-traded securities:

> Disparate, and shifting, state litigation procedures may expose issuers to the potential for significant liability that cannot easily be evaluated in advance, or assessed when a statement is made.  At a time when we are increasingly experiencing and encouraging national and international securities offerings and listings, and expending great effort to rationalize and streamline our securities markets, this fragmentation of investor remedies potentially imposes costs that outweigh the benefits.  Rather than permit or foster fragmentation of our national system of securities litigation, we should give due consideration to the benefits flowing to investors from a uniform national approach.

S. Rep. No. 182, at *3 (quoting Testimony of the Commissioner of the Securities Exchange Commission, July 24, 1997).

By seeking to hold Crews liable for negligence with respect to alleged misstatements and omissions made in the offer and sale of nationally-traded securities under less stringent state laws, Nuveen is attempting to do exactly what Congress intended to stop – circumvent federal law and heightened standards of liability and pleading with respect to such interstate securities transactions.[28]  Notwithstanding the enactment of the PSLRA and SLUSA, all three of the state securities laws pleaded by Nuveen first in this Court and now in state court have been interpreted as allowing a securities-fraud plaintiff to prevail upon a showing of mere negligence by a defendant.[29] And, none of these statutes appear to include a scienter requirement, as mandated under federal law.  If Nuveen were allowed to proceed under the state laws pleaded so far without requiring factual allegations to demonstrate scienter, as required by the PSLRA, Congress's purpose to provide for

---

[28] Congress' intent to preempt lesser scienter requirements in state court was recently cemented when it passed the Dodd-Frank Wall Street Reform and Consumer Protection Act on July 21, 2010, signed into law by President Obama on that date.  Its effective date was July 22, 2010, prior to Defendants' state court suit.  This legislation has been deemed the most sweeping financial legislative reform since the Investor Advisers Act of 1940.  The legislation applies a lesser pleading standard for credit rating agencies and certain enforcement actions by the Securities Exchange Commission, making it easier to pursue credit rating agencies.  *See* Section 933 of Act amending Section 21D(b)(2) of the Securities Exchange Act of 1934 (15 U.S.C. 78U-4(b)(2)).  However, the Act continues to apply the heightened pleading standards to all private actions "except" to those credit rating agencies.  *Id.*  If Congress intended for a lesser standard to apply to state court actions such as that filed by Defendants, it would have done so in this sweeping reform legislation.  *See generally*, Nutter, *Dodd-Frank Wall Street Reform and Consumer Protection Act Review and Analysis*, www.nutter.com.

[29] *See, e.g.*, *Farmers & Merchants Bank v. Hamilton Hotel Partners of Jacksonville LP*, 702 F. Supp. 1417, 1422 (W.D.Ark. 1988) (Waters, C.J.) (holding that scienter is not required under Arkansas securities law and that "[m]isrepresentations or omissions under Arkansas blue-sky law are actionable if either intentionally or negligently made") (citing *Vanderboom v. Sexton*, 422 F.2d 1233, 1238-39 (8th Cir. 1970)); *Landry v. Thibaut*, 523 So. 2d 1370, 1379 (La. App. 5th Cir. 1988) ("Under the Louisiana [securities fraud] statute the standard for liability is negligence: the defendant must sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission."); *Foster v. Alex*, 572 N.E. 2d 1242, 1245 (Ill. App. 3d Cir. 1991) (holding that scienter is not required under Illinois' securities law).  Crews does not concede that all three of those laws would properly apply to the transactions at issue even in the absence of the constitutional defects.

uniform and efficient regulation of nationally-traded securities would be thwarted.  Accordingly, to the extent the provisions of the blue-sky laws of Arkansas, Louisiana, and Illinois apply to nationally-exchanged securities, those laws violate the Supremacy Clause of the United States Constitution and are preempted by the PSLRA.

Implied federal preemption results when: (1) the federal legislation is so comprehensive that it must be inferred that Congress desired to occupy the field fully to the exclusion of state law, *or* (2) state law conflicts with the federal law and impedes its purposes.  *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 116 S. Ct. 1103, 1107 (1996).  Implied preemption, thus, may be found when "'the state law *** stan[ds] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Guice v. Charles Schwab & Co., Inc.*, 674 N.E.2d 282, (N.Y. App. 1996) (quoting *Barnett Bank*, *supra*).  *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 102 S. Ct. 2629 (1982) (holding that Illinois' Business Takeover Act was impliedly preempted by federal securities law because its provisions conflicted with and obstructed the federal law's goals and purposes of protecting the shareholders of the target company).[30]

---

[30] *See also Guice*, 674 N.E.2d 282 (holding that SEC regulation that governed the degree of disclosure or order flow payments preempted New York state law, which purported to require more burdensome and detailed disclosures, explaining that "[p]ermitting the courts of each State to impose civil liability on national securities brokerage firms … for failure to meet more stringent common-law agency standards of disclosure of receipt of order flow payments (rather than the Federally mandated *uniform* specific disclosure …) would inevitably defeat the congressional purpose of enabling the SEC to develop and police that 'coherent regulatory structure' for a national market system"); *Credit Suisse Securities (USA), LLC v. Billing*, 551 U.S. 264, 127 S. Ct. 2383 (2007) (holding that plaintiffs were precluded from pursuing antitrust claims against underwriters of securities for alleged conduct that was subject to regulation by the SEC and the federal securities laws, because the laws were incompatible and explaining that to "permit an antitrust lawsuit risks circumventing [the PSLRA's heightened procedural] requirements by permitting plaintiffs to dress what is essentially a securities complaint in antitrust clothing").

17

Here, there is undoubtedly a collision of Nuveen's state-law causes of action with federal securities law. As discussed, Congress's express purpose in passing the PSLRA was to impose a heightened standard for liability with respect to interstate securities transactions and to curtail lawsuits arising out of the sale of securities against defendants who had no intent to defraud the purchasers. Although Congress did not expressly preempt *all* aspects of state blue-sky laws through the PSLRA or SLUSA, it is clear that the congressional intent and purpose of those laws was to preclude securities plaintiffs from doing precisely what Nuveen has attempted to do here. By invoking only certain states' blue-sky laws that impose a negligence standard for liability and by suing for negligent misrepresentation in state court, Nuveen is trying to achieve exactly what Congress intended to stop – applying inconsistent rules of liability with respect to transactions affecting the nation's capital markets. The states' laws are, thus, preempted by federal securities law.

> **b.   This action requires that the Court also determine whether the blue-sky laws invoked by Nuveen violate the Commerce Clause when applied to these transactions.**

The Commerce Clause provides that "Congress shall have Power … [t]o regulate Commerce … among the several States." U.S. Const., art. I, § 8, cl. 3. The Commerce Clause has been interpreted as a limitation on state power. *Great Atlantic & Pacific Tea Co. v. Cotrell*, 424 U.S. 366, 370-71, 96 S. Ct. 923, 927 (1976). Although the Commerce Clause allows some *incidental* state regulation, it prohibits the states from *directly* regulating interstate commerce. *Edgar*, 457 U.S. at 640, 102 S. Ct. at 2639-40. Moreover, even when a state law only incidentally impacts interstate commerce, the state law will still be invalidated if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 847 (1970). "Generally speaking, the Commerce Clause protects against inconsistent

legislation arising from the projection of one state regulatory regime into the jurisdiction of another State," and "dictates that no State may force an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another." *Healy v. Beer Institute*, 491 U.S. 324, 336-37, 109 S. Ct. 2491, 2499-2500 (1989) (citing *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 582, 106 S. Ct. 2080, 2086 (1986)).

In the area of securities law, states have traditionally regulated *intrastate* securities transactions, and the Supreme Court has upheld their authority to do so through enactment of blue-sky laws. *Edgar*, 457 U.S. at 641, 102 S. Ct. at 2640. Blue-sky laws, therefore, have withstood Commerce Clause challenges on several occasions before the Supreme Court. *See id.* (citing *Hall v. Geiger-Jones Co.*, 242 U.S. 539, 37 S. Ct. 217 (1917); *Caldwell v. Sioux Falls Stock Yards Co.*, 242 U.S. 559, 37 S. Ct. 224 (1917); *Merrick v. N.W. Halsey & Co.*, 242 U.S. 568, 37 S. Ct. 227 (1917)). But, "[t]he Court's rationale for upholding blue-sky laws was that they only regulated transactions occurring *within the regulating States*." *Id.* (Emphasis added). Section 28(a) of the Exchange Act recognizes the presumed validity of such state laws governing *intrastate* securities transactions and was, in fact, designed to save state blue-sky laws from preemption *to the extent such laws do not conflict with federal law or regulate interstate transactions*.[31] *See* 15 U.S.C. § 78bb(a).

The Supreme Court in *Edgar v. MITE Corp.*, cited above with respect to preemption, is instructive as to the Commerce Clause issue as well. 457 U.S. 624, 102 S. Ct. 2629 (1982). A majority of the *Edgar* Court agreed that the Illinois takeover law at issue differed from provisions of blue-sky laws that had withstood Commerce Clause challenges. At issue was an Illinois law that regulated takeover offers for the shares of a target company that had certain statutorily-delineated

---

[31] *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 182, n. 13, 99 S. Ct. 2710, 2716, n. 13 (1979) (discussing Section 28(a)'s purpose).

connections to the State of Illinois. *Id.* at 641-42, 102 S. Ct. at 2640. Under the act, the Illinois Secretary of State could block a takeover of such a company, even if the offer would not affect a single Illinois shareholder. *Id.* at 627, 102 S. Ct. at 2633. The *Edgar* Court concluded that the Illinois act violated the Commerce Clause because it regulated transactions (tender offers) that necessarily took place across state lines and applied even when no Illinois shareholders were at issue. *Id.* at 641-42, 102 S. Ct. at 2640.

As the Court discussed, the Illinois law not only prevented an out-of-state entity from making an offer to take over a statutorily-covered company to Illinois shareholders of that company, but prevented offers to stockholders living outside of Illinois. "Indeed, the Illinois law on its face would apply even if not a single one of [the target company's] shareholders were a resident of Illinois, since the Act applies to every tender offer for a corporation meeting [the Act's conditions]." *Edgar*, 457 U.S. at 641-42, 102 S. Ct. at 2640. According to the Court, it was therefore "apparent that the Illinois statute [was] a direct restraint on interstate commerce and that it [had] a sweeping extraterritorial effect." *Id.*, 102 S. Ct. at 2641. Because the state statute directly interfered with and burdened commerce that took place wholly outside of Illinois' borders, it did not matter what was its purpose, and the Court considered it to be a prohibited regulation. *Id.*

The *Edgar* Court also found that, even if not a *per se* Commerce Clause violation, the statute violated the dormant Commerce Clause under the standard articulated in *Pike*, *supra*, which applies to state laws that only indirectly regulate interstate commerce. *Edgar*, 457 U.S. at 462, 102 S. Ct. at 2641.[32] Upon exploring the potential extraterritorial effects of the Illinois takeover law, the *Edgar* Court concluded that it obviously burdened interstate commerce as it purported to give Illinois the

power to determine whether a tender offer may proceed anywhere and its effects included depriving shareholders across the country of opportunities to sell their stock at premium prices. *Edgar*, 467 U.S. at 462, 102 S. Ct. at 2641. Finally, the Court rejected the State's assertion that the two local interests served by the act – to protect resident security holders and to regulate the internal affairs of companies incorporated under Illinois law – outweighed the burdens on interstate commerce. *Id.* at 644, 102 S. Ct. at 2641. "While protecting local investors is plainly a legitimate state objective, ***the State has no legitimate interest in protecting nonresident shareholders***." *Id.* (Emphasis added).[33]

There are two obvious similarities between the Illinois act struck down in *Edgar* and the three states' blue-sky laws at issue here. First, none of the three state acts are facially limited to regulation of only *intrastate* transactions. To the contrary, all three evidence that they are intended to apply to *interstate* securities transactions and not simply to transactions occurring wholly within the boundaries of each respective state. Second, as with the Illinois takeover law, the dormant aspect of the Commerce Clause is also violated, because all three laws could be applied *even if none of the securities plaintiffs reside in any one of the three regulating states*. In fact, there are no Louisiana or Arkansas claimants here, yet both of those states' securities laws have been invoked. All three blue-sky laws could be applied by securities holders who reside outside of those states to hold an issuer or seller of nationally-traded securities liable under a negligence standard of care instead of the federal standard for fraud. Indeed, that is precisely what Nuveen is attempting to do.

---

[32] Under *Pike*, a state regulation or law may be upheld even if it indirectly affects interstate commerce as long as the burden imposed on that commerce is not excessive in relation to the local interests served by the state law. *Pike*, 397 U.S. at 142, 90 S. Ct. at 847.

[33] *See also National City Lines, Inc. v. LLC Corporation*, 687 F.2d 1122 (8th Cir. 1982) (adopting majority's reasoning in *Edgar v. MITE* and holding that Missouri's takeover bid disclosure law also was invalid under the Commerce Clause).

In sum, the application of the blue-sky laws to hold Crews liable for allegedly negligent conduct during the course of these interstate securities transactions would run afoul of the Commerce Clause and impose unreasonable and excessive burdens on such national transactions. Although the states remain free to regulate wholly intrastate transactions that take place within their borders, they cannot impermissibly burden interstate securities transactions by imposing inconsistent and more stringent standards of conduct than exist under federal law on sellers and issuers of such nationally- and internationally-traded securities.

Although the Commerce Clause and preemption arguments are not yet ripe for this Court's resolution on the pending motion, the discussion demonstrates that jurisdiction properly exists over Crews' federal complaint.  The Complaint not only invokes the Court's exclusive federal question jurisdiction under the Exchange Act but also requires resolution of these substantial questions of federal preemption and constitutional law.

**C.**      **Complete diversity exists between the parties in this action.**

As discussed, Nuveen first filed its lawsuit in this Court, but only invoked the Court's subject-matter jurisdiction based on diversity of citizenship.  As pleaded in that original complaint, Nuveen's state-court complaint, and Crews' Complaint, the four Nuveen business trusts at issue were organized under the laws of Massachusetts and have their principal places of business in Illinois.[34]  Nuveen now argues, without offering documentary support, that the four Nuveen trusts *may* have a beneficiary located in Arkansas and that, under two cases from other appellate circuits, there *may* not be complete diversity.

---

[34] *See* Nuveen's federal complaint, Exhibit 1 to its memorandum, at ¶¶ 11-16; Nuveen's state-court complaint, Exhibit 2 to its memorandum, at ¶¶ 11-16; Crews' Complaint, at ¶¶ 2-5.

22

Central to this issue is the Supreme Court's opinion in *Navarro Savings Association v. Lee*, 446 U.S. 458, 100 S. Ct. 1779 (1980).  In *Navarro*, the Court considered whether the trustees of a Massachusetts business trust could invoke the diversity jurisdiction of the federal courts based on their own citizenship, rather than that of each of the trust's beneficiaries.  *Id.* at 458, 100 S. Ct. at 1781.  The Court noted that the trustees in that case held title to the assets and investments in trust for the benefit of the trust's shareholders and that the Declaration of Trust gave the trustees the exclusive authority over the property to the same extent as if the trustees were the sole owners.  *Id.* at 459, 100 S. Ct. at 1781.  Finding that the trustees "invest the funds of the trust, lend money, and initiate or compromise lawsuits relating to the trust's affairs," the Court concluded that the trustees were the real parties to the controversy and that there was no need to look past them to the citizenship of the beneficial shareholders to determine whether complete diversity existed.  *Id.* 465-66, 100 S. Ct. at 1784.  The Court noted that the business trust was a distinct legal entity and should not be treated for all purposes like either an unincorporated association, such as a partnership, or a corporation.  *Id.* at 461-62, 100 S. Ct. at 1782.

Here, precisely as in *Navarro*, the Court has before it four Massachusetts business trusts.  As demonstrated in the attached Annual Reports for each of the four Nuveen trusts at issue, the trustees are all citizens of Illinois.[35]  A review of the trust documents further reveals that the trustees of these four entities hold the same type of control and power over the trusts and the trusts' assets as in

---

[35] *See* Certified Copies from the Massachusetts Secretary of State of 2010 Reports of Nuveen Municipal Trust (the trust in which Nuveen High Yield Municipal Bond Fund is a series), Nuveen Investment Trust V (the trust in which Nuveen Preferred Securities Fund is a series), Nuveen Municipal High Income Opportunity Fund, and Nuveen Multistate Trust II (in which Nuveen California High Yield Municipal Bond Fund is a series), Exhibit E, *in globo*.

*Navarro*.[36]   The Nuveen entities could not fit more neatly within the Supreme Court's *Navarro* analysis to determine that there is no need to consider the citizenship of the trusts' unknown beneficial shareholders for purposes of diversity jurisdiction.

Nuveen, however, asserts that *Navarro*'s holding is limited to cases in which the trustees are named as individual parties.   It relies on a Third Circuit and Eleventh Circuit case to make the argument.   Those two cases, *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192 (3d Cir. 2007) and *Riley v. Merrill Lynch, Pierce, Fenner & Smith*, 292 F.3d 1334 (11th Cir. 2002), held that the citizenship of all business trust beneficiaries must be considered for diversity purposes when a business trust sues or is being sued in its own name.   Those courts reached that conclusion, *which has not been adopted by the Eighth Circuit*, by expanding on certain *dicta* found in *C.T. Carden v. Arkoma Associates*, 494 U.S. 185, 110 S. Ct. 1015 (1990).

In *Carden*, the Supreme Court held that, when *a limited partnership* is a party, a court must take the citizenship of all limited partners into account to determine diversity of citizenship among the parties.   *Carden*, 494 U.S. at 196-97, 110 S. Ct. at 1021.   *Dicta* in *Carden* suggests that the citizenship of all members of all types of artificial entities (other than corporations) must be considered for diversity purposes, and that *Navarro* has limited application.   Those statements were purely *dicta*, however, and neither the Supreme Court nor the Eighth Circuit has addressed the specific question of a business trust's citizenship for diversity purposes when the trust is a party defendant in its own name.   Moreover, the appellate courts in *Emerald Investors Trust* and *Riley*

---

[36] *See* Certified Copies of Declaration of Trust for Nuveen Municipal High Yield Opportunity Fund, Exhibit F, Article VI ("Powers of Trustees"), at pp. 9-13; Declaration of Trust of Nuveen Investment Trust V, Exhibit G, Article VI ("Powers of Trustees"), at pp. 11-15; Declaration of Trust of Nuveen Flagship Municipal Trust (later renamed as the Nuveen Multistate Trust II), Exhibit H ("Powers of Trustees"), at pp. 11-15.   The Declaration of Trust of Nuveen Municipal Trust has been ordered, but

recognized that: (1) *Carden* did not expressly require the result reached in those cases, (2) there is uncertainty on the question particularly in light of *Navarro*, and (3) the appellate circuits are divided on the issue. *See, e.g.*, *Emerald Investors*, 492 F.3d at 198-201 (following *Carden's dicta*, but noting that its decision was at odds with both the Seventh and the Ninth Circuits).

As the Third Circuit in *Emerald Investors* noted, both the Seventh and Ninth Circuits have held that the "citizenship of a trust is that of the trustee." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006). *See also Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("A trust has the citizenship of its trustee or trustees."). The Sixth Circuit has also followed the rule of *Navarro* that a trust "has the citizenship of its trustees." *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 Fed. Appx. 731, 732 (6th Cir. 2002) (citing *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) and *Navarro*, *supra*). *See also Beech v. Select Portfolio Servicing, Inc.*, No. Civ.A. 10-547, 2010 WL 2775855 (E.D.Ark., July 13, 2010) (explaining that under *Navarro*, a trustee's citizenship, not that of the trust's unknown beneficiaries, is considered for purposes of diversity).[37]

Although the issue is not settled, Nuveen would have this Court adopt what appears to be the minority view on the question. Crews submits that the Court should apply the rationale of *Navarro* and find that, based on the trustees' Illinois citizenship, there is complete diversity here. This seems particularly appropriate given that the Nuveen trust documents expressly state that these entities are "not intended to be, shall not be deemed to be, and shall not be treated as, a general or a limited

---

has not yet been received from the Secretary of State of Massachusetts. Crews will supplement the record as soon as these documents are received.

[37] The trustee was sued as a party defendant in *Beech*, but the district court's reliance on *Navarro* and reasoning that "the citizenship of unknown trust beneficiaries does not destroy complete diversity" is applicable regardless of whether the trust or the trustee is named. *Beech*, 2010 WL 2775855, at *1.

partnership, joint venture, corporation, or joint stock company,"[38] such that *Carden*'s holding

regarding limited partnerships is inapplicable.[39]  *See also Stouffer Corp. v. Brekenridge*, 859 F.2d

75 (8th Cir. 1988) (anticipating *Carden*'s holding by concluding that the citizenship of a *limited*

*partnership* for purposes of diversity is determined by considering each limited partner's domicile

and distinguishing *Navarro* on basis that it was concerned with an "express trust," which is "neither

an association nor a corporation").

### D.    This Court should exercise its discretion to adjudicate this action.

Finally, Nuveen's argument that the Court should decline to hear this action based on

discretionary grounds should be rejected.  Nuveen relies primarily on a Fifth Circuit case, which sets

forth seven factors to be considered by a district court in deciding whether to abstain from

adjudicating a declaratory judgment action.  The Eighth Circuit has, however, addressed this issue

many times, such that there is no need for the Court to look to the law of a sister Circuit.

The Eighth Circuit has adopted the test set forth in *Brillhart v. Excess Ins. Co. of America*,

316 U.S. 491, 62 S. Ct. 1173 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137

(1995), for determining whether a district court should exercise its discretion to abstain from hearing

a declaratory judgment action when there is a parallel state-court proceeding.  *See Royal Indem. Co.*

---

[38]  *See* Exhibits F-I, Article II ("Nature and Purpose of Trust").

[39]  Because Crews could not have foreseen that Nuveen would urge this Court to adopt the jurisdictional rule set forth in *Emerald Investors Trust* and *Riley*, it, in good faith, did not determine nor allege the citizenship of Nuveen's unknown beneficiaries.  Moreover, it appears that this information may not be readily accessible as Nuveen raised this issue in its motion to dismiss but provided no documentation on the question.  Accordingly, solely to the extent this Court determines that the citizenship of the beneficiaries is relevant for jurisdictional purposes, Crews requests a brief period of time in which to conduct jurisdictional discovery on the citizenship of Nuveen's beneficial shareholders and/or to amend its complaint, if necessary, to name the trustees as party defendants, before the Court rules on this motion.

*v. Apex Oil Co.*, 511 F.3d 788 (8th Cir. 2008).  For a district court to have discretion to abstain under

the Declaratory Judgment Act, there must be a parallel state court action that presents "'the same

issues, *not governed by federal law*, between the same parties….'"  *Id.* at 793 (quoting *Brillhart*, 316

U.S. at 495) (emphasis added).   Importantly, according to *Brillhart*, the district court must also

evaluate "the scope of the pending state court proceeding *and the nature of defenses open there*," as

well as "'whether the claims of all parties in interest can satisfactorily be adjudicated in that

proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to

process in that proceeding….'"  *Brillhart*, 316 U.S. at 495, 62 S. Ct. at 1176 (emphasis added).

After considering those factors, a district court *may* abstain if it would be "uneconomical as well as

vexatious" for the federal court and the state court to proceed simultaneously.  *Id.*

A critical factor implied by *Brillhart* and focused on by the Eighth Circuit is whether there is

a federal question in the declaratory judgment action that is not present in the state court proceeding.

*See Verizon Communications, Inc. v. Inverizon Intern, Inc.*, 295 F.3d 870, (8th Cir. 2002) (citing

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26, 103 S. Ct. 927 (1983)

(indicating that "the presence of federal-law issues must always be a major consideration weighing

against surrender" of federal jurisdiction).   In *Verizon*, the declaratory judgment defendant

(Inverizon) had sent a cease and desist letter demanding that Verizon refrain from using the

"Verizon" trademark because its use was likely to cause confusion with Inverizon's mark.  *Verizon*,

295 F.3d. at 871.  After an unsuccessful attempt to negotiate a resolution, Verizon filed a declaratory

judgment complaint in federal court asking the court to declare that its use of the "Verizon" mark did

not violate the Lanham Act with respect to Inverizon.  *Id.* at 872.  Inverizon then filed a lawsuit in

state court against Verizon under state trademark law and moved to stay or dismiss the federal

action.  *Id.*  The federal district court stayed the federal action, but the Eighth Circuit reversed the decision.  *Id.*

In reversing, the Eighth Circuit explained that the district court failed to give the necessary "significant weight" to the fact that the federal and state actions in that matter did not, in fact, involve the same issues and claims, because Inverizon expressly disavowed that it was suing under federal trademark law.  *Verizon*, 295 F.3d at 873.  On the other hand, there was an actual dispute as to whether Verizon's use of its mark violated the Lanham Act, which was the "gravamen" of the federal complaint.  *Id.* at 874.  The Court determined that the district court abused its discretion in staying the federal case because it "failed to consider the fact that federal law governs the primary claims raised in the declaratory judgment suit and only issues of state law are raised in the state court action."  *Id.* (citing *Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 790 (8th Cir. 1998)).[40]

The same analysis should apply here.  As Nuveen has been careful to assert, it has not sued under federal law to date.  The state-court action is premised only on state securities laws, albeit preempted ones.  Crews' federal Complaint, on the other hand, asks the Court to resolve whether it violated the Exchange Act in these transactions.  Under *Verizon*, the existence of that federal question weighs heavily against the Court's dismissal or stay of this action.

The other discretionary *Brillhart* factors also weigh against dismissing Crews' Complaint.  First, the state court cannot exercise jurisdiction to determine whether Crews is liable under federal securities law, as federal courts have exclusive jurisdiction over federal securities claims.  Accordingly, all of the matters in controversy cannot be fully litigated in state court.  Conversely,

---

[40]  The Court in *Verizon* discussed that the federal action was the first-filed in that case, but did not find the point to be dispositive.  *Verizon*, 295 F.3d at 874-75.

this Court can adjudicate not only the federal claims, but Nuveen's state-law claims as well.[41]  As discussed, that adjudication will turn at the outset on further questions of federal law.  Further, as noted above, all parties in this action have been served, but Nuveen's state-court complaint faces dismissal with respect to the individual defendants it has attempted to sue for failure to accomplish service.  Finally, we submit there is a likelihood that the state court itself will grant Crews' motion to stay that matter so that this Court can resolve the important federal issues and constitutional challenges presented by the parties' controversy.

Ironically, Nuveen accuses Crews of forum-shopping and argues that the Court should weigh that factor in favor of dismissal of this declaratory judgment action.  Yet, Nuveen first selected this very forum to adjudicate the parties' dispute.  Nuveen submits that the only reason it dismissed its federal action was because it only just recently discovered the Third and Eleventh Circuit opinions regarding citizenship of business trusts, which, notably, were decided years ago.  Nuveen's act of voluntarily dismissing its federal suit the day before Crews' responsive pleadings were due and immediate re-filing in state court, all without any advance notice to Crews, raises legitimate questions about whether *Nuveen* -- not Crews -- has been engaged in forum shopping.  Accordingly,

---

[41]   As noted, Nuveen has attempted to sue other parties related to Crews in the state action, including its parent company, its officers and directors, and an employee who works in Crews' Louisiana office.  Those defendants have been sued as alleged "controlling persons" of Crews, such that, if Crews is found to be liable for securities fraud, those defendants may be jointly and severally liable with it for any damages.  The presence of those additional defendants in the state-court action does not change that this Court can resolve the critical controversy at issue – whether Crews is liable under any securities laws to Nuveen.  The other parties, whom have not all been served yet such that they may not all remain parties in state court, would have only secondary or derivative liability if Crews was found to be liable for a primary securities violation.  Accordingly, if this Court proceeds to adjudicate this matter, Nuveen may either join those other parties in this action (if it can) or litigate the derivative question of controlling person liability in the state court (to the extent the claims are legally viable) after the primary determination is made here.  Notably, all alleged "controlling person" claims fall as a matter of law if the allegations against Crews fail.

to the extent the Court weighs forum-shopping as a relevant factor, it should be weighed against Nuveen and in favor of adjudicating the declaratory judgment complaint.

Finally, the first-filed rule referenced by Nuveen provides that, in cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case. *Northwest Airlines, Inc. v. Am. Airlines, Inc.,* 989 F.2d 1002, 1005 (8th Cir. 1993); *Orthmann v. Apple River Campground, Inc.,* 765 F.2d 119, 121 (8th Cir. 1985). The rule is not, however, to be applied mechanically or rigidly, but rather "in a manner best serving the interests of justice." *Northwest Airlines*, 989 F.2d at 1005. Here, the first-filed action arising out of these parties' dispute was arguably Nuveen's original federal complaint in this Court, to which Crews' declaratory judgment complaint is related. Moreover, pending before the state court is Crews' motion to stay the state proceeding based on the Arkansas rule that a court does not acquire jurisdiction upon the filing of a complaint but rather upon all of the parties in the action being served. *See Shotzman v. Berumen*, 213 S.W.3d 13, 19 (Ark. 2005). As mentioned above, several of the defendants in the state court action have not yet been served, even though Nuveen's state-court complaint was filed the day before this one. Thus, if each court were to apply its own rule mechanically, neither court would adjudicate this matter, but would instead wait for the other court to exercise its jurisdiction. Given this inconsistency, jurisdictional priority rules simply cannot be applied in a rigid fashion. Here, the interests of justice and judicial economy weigh in favor of this Court's proceeding to adjudicate this matter.

## IV.    <u>CONCLUSION</u>

Nuveen's motion to dismiss should be denied.  There is undoubtedly federal question jurisdiction over the federal securities law claims at issue.  The Court may also properly exercise jurisdiction over the questions of federal preemption and constitutional law, whether as federal questions or pursuant to the Court's subject-matter jurisdiction.   Contrary to Nuveen's argument, there is complete diversity, given that Pacific is a California company and the Nuveen entities' trustees are all citizens of Illinois, where those trusts have their principal places of business.  Finally, the discretionary factors weigh in favor of this Court hearing this action.[42]

For all of these reasons, Crews respectfully urges the Court to deny the motion to dismiss.

Respectfully submitted,

/s/ Stephen Engstrom
Stephen Engstrom, Ark. Bar No. 74047
stephen@wecc-law.com
Gary D. Corum, Ark. Bar No. 82038
gary@wecc-law.com
Nate Coulter, Ark. Bar No. 85034
nate@wecc-law.com
Shirley Jones, Ark. Bar No. 90083
shirley@wecc-law.com
Of
WILSON, ENGSTROM, CORUM & COULTER
200 River Market Avenue, Suite 600
Post Office Box 71
Little Rock, Arkansas 72203
Telephone: (501) 375-6453

AND

---

[42] Even if the Court would be inclined against adjudicating this matter in deference to the state-court proceeding, a stay of the federal case – not dismissal – would be the more appropriate course of action.  *See Royal*, 511 F.3d at 797 ("As courts have noted, 'where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case ... fails to resolve the matter in controversy.'")(Quoting *Wilton*, 515 U.S. at 288, n. 2, 115 S. Ct. 2137).

Richard C. Stanley, La. Bar No. 8487
(admitted *pro hac vice*)
rcs@stanleyreuter.com
Jennifer L. Thornton, La. Bar No. 27109
(admitted *pro hac vice*)
jlt@stanleyreuter.com
      Of
STANLEY, REUTER, ROSS, THORNTON
  & ALFORD, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana  70112
Telephone:  (504) 523-1580

*Attorneys for Crews & Associates, Inc.*

### CERTIFICATE OF SERVICE

     I hereby certify that on September 9, 2010, a copy of the foregoing Memorandum in Opposition of Defendant's Motion to Dismiss will be served via electronic notification to the following counsel of record:

• Scott E. Poynter
scott@emersonpoynter.com,tanya@emersonpoynter.com,swilson@emersonpoynter.com

and via first class United States mail, postage prepaid, to the following:

Mr. Michael P. Cillo
Ms. Melissa J. Hessler
1350 Seventeenth Street, Suite 400
Denver, Colorado 80202

Mr. James M. Garner
Mr. John T. Balhoff
Ms. Jennifer M. Hoffman
909 Poydras Street, Twenty-eighth Floor
New Orleans, Louisiana 70112

          /s/ Stephen Engstrom