UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CREWS & ASSOCIATES, INC., an Arkansas**
**Corporation**                                                      **PLAINTIFF**

**vs.**                              **Case No. 4:10-CV-1098-BSM**

**NUVEEN HIGH YIELD MUNICIPAL BOND FUND,**
**a series of the Bond Municipal Trust, a Massachusetts**
**business trust, et al.**                                          **DEFENDANTS**

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants Nuveen High Yield Municipal Bond Fund, Nuveen Municipal High Income Opportunity Fund, the Nuveen California High Yield Municipal Bond Fund, the Nuveen Preferred Securities Fund (collectively the "Bond Funds") and Pacific Insurance Company ("Pacific") respectfully submit the following Reply in support of their Motion to Dismiss:

### I.      Summary of Argument

Crews & Associates, Inc. ("Crews") contends this court should ignore the Supreme Court's *Carden* decision and not follow the Third and Eleventh Circuits' decisions in *Emerald* and *Riley* (even though they are the only circuits and only decisions to thoroughly analyze the business trust issue). Crews ignores the well-pleaded complaint rule and continues to argue this Court has subject-matter jurisdiction because the Bond Funds and Pacific could theoretically assert a section 10b claim (which Crews would then seek to dismiss on the grounds that it fails to state a claim). Crews also relies on what it views as a "federal defense" to the Bond Funds and Pacific's state securities act and common law claims, asserting that they are preempted by federal law. The federal courts have not preempted state securities claims or negligent misrepresentation

claims. Moreover, a purported federal defense to a state law claim does not provide federal question jurisdiction.

To the extent this Court has discretion, it should decline to hear the declaratory judgment claim. If this Court were to exercise federal question jurisdiction, the parties could fully litigate these claims in this Court only to have a verdict overturned on an appeal, for lack of jurisdiction. The state court is fully equipped to address the preemption issue. On the other hand, if this dispute is resolved in state court under the state law claims originally brought by the Bond Funds and Pacific rather than the contrived federal claim and defense brought by Crews, the parties can be assured of a final resolution on the claims with no basis for an appeal based on subject matter jurisdiction.

## II.   Argument

### A.   Crews Has Not Established Diversity Jurisdiction.

Crews contends that, for diversity purposes, the citizenship of a business trust is determined solely by the citizenship of its trustees, relying mainly on *Navarro Savings Association v. Lee*, 446 U.S. 458, 465 (1980). In *Navarro*, the Supreme Court held that eight individual trustees of a business trust, who brought an action for breach of contract *in their individual capacities*, could invoke the diversity jurisdiction of the federal court on the basis of their own citizenship, "without regard to the citizenship of the trust beneficiaries." *Id.* at 446. The Court did not and has not addressed the issue of whether federal courts will look to citizenship of the beneficiaries of a business trust when the suit is brought in the name of the trust rather than in the name of the beneficiaries. *Navarro* does not support Crews' contention that this Court must disregard the citizenship of the

beneficiaries of a business trust in determining subject matter jurisdiction.  By asserting

that the Bond Funds and Pacific are only citizens of the state (or states) in which their

trustees are citizens, Crews appears to be urging application of the rule governing the

citizenship of a **corporation**.  *See Navarro* at 461, n.7 (1980).  This rule does not apply

to unincorporated associations such as business trusts.  The Supreme Court, in *C.T.*

*Carden v. Arkoma Associates*, 494 U.S. 185, 191-92 (1990), limited the holding in

*Navarro* to its facts.[1]  *Carden* explicitly holds that the citizenship of an artificial entity

other than a corporation is determined by the citizenship of "every member" of the entity.

*Id.* at 195.  In *Carden*, Justice Scalia distinguished the holding in *Navarro* and limited

*Navarro* to its facts:

> [*Navarro*], however, did not involve the question whether a party
> that is an artificial entity other than a corporation can be
> considered a "citizen" of a State, but the quite separate question
> whether parties that were undoubted "citizens" (viz., natural
> persons) were the real parties to the controversy. The plaintiffs in
> *Navarro* were **eight individual trustees** of a Massachusetts
> business trust, **suing in their own names.** The defendant, Navarro
> Savings Association, disputed the existence of complete diversity,
> claiming that the trust beneficiaries rather than the trustees were
> the real parties to the controversy, and that the citizenship of the
> former and not the latter should therefore control. In the course of
> rejecting this claim, we did indeed discuss the characteristics of a
> Massachusetts business trust – not at all, however, for the purpose
> of determining whether the trust had attributes making it a
> "citizen," but only for the purpose of establishing that the
> respondents were "active trustees whose control over the assets

---

[1]  In *Carden*, a limited partnership brought suit on a contract claim in federal court relying on diversity jurisdiction. 494 U.S. at 186. The defendants, all Louisiana citizens, moved to dismiss on the basis that one of the limited partners was also a citizen of Louisiana. *Id.*  The Court of Appeals held that there was complete diversity among the parties because the citizenship of the limited partnership was determined by the citizenship of the general, and not the limited partners. *Id.* at 186-87. The Supreme Court granted certiorari to determine "whether, in a suit brought by a limited partnership, the citizenship of the limited partners must be taken into account to determine diversity of citizenship among the parties." *Id.* at 186. In reversing the Court of Appeals, the Supreme Court reaffirmed the "oft-repeated rule" of *Chapman v. Barney*, 129 U.S. 677 (1889), and rejected "the contention that to determine for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members." *Id.* at 195.

> held in their names is real and substantial," thereby bringing them under the rule, "more than 150 years" old, which permits such trustees "to sue in their own right, without regard to the citizenship of the trust beneficiaries."

*Id.* at 191 (emphases added).

Here, the trustees of the Bond Funds have not attempted to sue in their own names – instead, the business trust entity is being sued by Crews. Because the Bond Funds are "artificial entities other than corporations," their citizenship for purposes of determining diversity jurisdiction depends on the citizenship of "all the members." *Id.* at 195, 197. If there are **any** shareholders of the Bond Funds who share Arkansas citizenship with Crews, "complete" diversity does not exist. *See Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 205 (3d Cir. 2007) ("For diversity of citizenship purposes, a court should examine the citizenship of trustees and the beneficiaries to determine the citizenship of the trust."); *Riley v. Merrill Lynch, Pierce, Fenner & Smith*, 292 F.3d 1334, 1339 (11th Cir. 2002) (same); *RTC Commercial Asset Trust v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 451-52 (7th Cir. 1999) (same). *Cf. Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54-55 (1st Cir. 2006) (applying *Carden* in holding that a limited liability partnership is a citizen of every state in which at least one of its partners reside); *American Fiber & Finishing, Inc. v. Tyco Healthcare Group*, LP, 362 F.3d 136, 138 (1st Cir. 2004) ("For purposes of diversity jurisdiction, a limited partnership is deemed to be a citizen of every state of which any of its general or limited partners are citizens.").

Crews asserts that *Emerald* and *Riley* are minority positions. However, *Emerald* and *Riley* are the only circuit court decisions to substantively review the effect of *Carden* on *Navarro*. In asserting its position, Crews relies on *Hicklin Engineering, L.C. v. R.J.*

*Bartell*, 439 F.3d 346, 348 (7th Cir. 2006); *Johnson v. Columbia Props. Anchorage, LP*,
437 F.3d 894, 899 (9th Cir. 2006) ("A trust has citizenship of its trustees"); and *Homfeld*
*II v. Comair Holdings, Inc.*, 53 Fed.Appx. 731 (6th Cir. 2002). In all of these cases, the
citizenship of "business trusts" is only mentioned in passing. *See id.* Unlike the Third
Circuit in *Emerald* and the Eleventh Circuit in *Riley*, none of the cited opinions analyzes
the issue or addresses any arguments on either side. *See id.* In fact, only *Homfeld* dealt
with a business trust. These three circuits have not considered the effect of *Carden,* and
accordingly, Crews has overstated the holding in *Navarro*.

As the plaintiff in this action, Crews bears the burden of establishing subject
matter jurisdiction through complete diversity of citizenship. Crews has not even
attempted to establish that the Bond Funds did not have any Arkansas shareholders (or
beneficiaries) as of July 30, 2010, when Crews filed this action.

**B.   A Federal Defense to State Law Claims Does Not Provide Federal Question Jurisdiction.**

1. ***The "pre-emption defense" was rejected almost 100 years ago with respect to state securities and common law claims.***

Crews contends, for the first time in its response to the motion to dismiss, that the
state law claims asserted by the Bond Funds and Pacific in the first-filed State Court
Action have been preempted by federal law. *Response,* p. 12. Crews recently filed a
motion to dismiss the first-filed State Court Action on the same grounds. Crews' motion
to dismiss is attached as Exhibit "1". The "pre-emption defense" was rejected nearly 100
years ago. *See, e.g., Hall v. Geiger-Jones Co.,* 242 U.S. 539, 557-58 (1917) and its
companion cases, *Caldwell v. Sioux Falls Stock Yards Co.,* 242 U.S. 559 (1917) and
*Merrick v. N.W. Halsey & Co.,* 242 U.S. 568 (1917) (collectively, the *"Blue Sky Cases"*).

The Bond Funds and Pacific's state court claims are not preempted because neither Congress nor the federal courts has ever preempted the entire securities field and neither the Commerce Clause nor the Supremacy Clause bans the application of state securities laws. The Bond Funds and Pacific's response to Crews' motion to dismiss the State Court Action, which addresses Crews' preemption argument and its assertion that the state statutes violate the Commerce Clause, is attached as Exhibit "2" and is incorporated herein as if set forth in its entirety.

> 2. *A federal defense to state law claims does not provide federal question jurisdiction.*

The Declaratory Judgment Act, 28 U.S.C. § 2201, operates only to provide a federal remedy and "cannot be used to create federal jurisdiction where none existed." *McCorkle v. First Penn. Banking & Trust, Co.*, 459 F.2d 243, 250 (4th Cir. 1972). "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened court action, **it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.**" *Larsen v. CIGNA HealthCare Mid-Atl., Inc.*, 224 F. Supp. 2d 998, 1005 (D. Md. 2002) (citing *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 248, 73 S. Ct. 236, 97 L. Ed. 291 (1952)) (emphasis added). "A case may *not* be removed to federal court on the basis of a federal defense, **including the defense of pre-emption**, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S. Ct. 2425, 2430, 96 L. Ed. 2d 318 (1987) (emphases added).

Crews, by filing a declaratory judgment action instead of removing the State Court Action to federal court, attempts to avoid the "well-pleaded complaint" rule of *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) which precludes removal on the basis of a federal defense. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987). "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co.*, 481 U.S. at 63 (citing *Gully v. First National Bank*, 299 U.S. 109, 57 S. Ct. 96, 81 L. Ed. 70 (1936)); *Mottley*, 211 U.S. at 152. In articulating the "well-pleaded complaint" rule, the Supreme Court stated:

> It is the settled interpretation of these words, as used in this statute, conferring jurisdiction, that a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution.

*Id.* "The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." *Metro. Life Ins. Co.*, 481 U.S. at 63 (citing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9-12, 103 S. Ct. 2841, 2846-48 (1983)).

"[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought

the defendant may interpose." *Taylor v. Anderson,* 234 U.S. 74, 75-76, 34 S. Ct. 724, 724, 58 L. Ed. 1218 (1914). A federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action but deprives the defendant of a federal-law defense he may raise to defeat the claim. *Franchise Tax Bd.,* 463 U.S. at 10, 103 S. Ct. at 2846 (citing *Taylor,* 234 U.S. at 75-76; *Mottley* 211 U.S. at 152; *Tennessee v. Union & Planters' Bank,* 152 U.S. 454, 14 S. Ct. 654, 38 L. Ed. 511 (1894)). "Allowing [even a federal] counterclaim to establish 'arising under' jurisdiction would also contravene the longstanding policies underlying our precedents. First, since the plaintiff is 'the master of the complaint,' the well-pleaded-complaint rule enables him, 'by eschewing claims based on federal law . . . to have the cause heard in state court.'" *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831, 122 S. Ct. 1889, 1894, 153 L. Ed. 2d 13 (2002) (quoting *Caterpillar,* 482 U.S. at 398-99).

The Bond Funds and Pacific's well-pleaded state court complaint only seeks to enforce state laws. Although not explicitly stated by Crews in its response, it appears Crews now may be trying to argue that its declaratory judgment action is saved by a corollary to the well-pleaded complaint rule: the complete preemption doctrine. The complete preemption doctrine, which is really only properly used as a basis for removal to federal court – not as a basis for a declaratory judgment action - recognizes that "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co.,* 481 U.S. at 63-64. The doctrine essentially converts a state law action into a federal action, for purposes of federal question jurisdiction. "The complete preemption doctrine applies only when a federal statute possesses 'extraordinary pre-emptive power,' a conclusion

courts reach reluctantly." *Magee v. Exxon Corp.*, 135 F.3d 599, 601 (8th Cir. 1998) (quoting *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir.1996); (*Metro. Life Ins. Co.*, 481 U.S. at 65, 107 S. Ct. at 1547). As set forth in the Bond Funds and Pacific's response to Crews' motion to dismiss the State Court Action (Exhibit "2"), the federal courts have consistently rejected any contention that state securities act claims and negligence-based common law claims have been preempted by federal law. It is the character of the Bond Funds and Pacific's complaint in the State Court Action that determines whether there is federal question jurisdiction. Because the Bond Funds and Pacific only allege state law claims against Crews, there is no proper federal question jurisdiction here.

State courts are well-equipped to deal with issues such as the ones presented in this case, and the court in the State Court Action has the inherent authority to decide all the constitutional issues raised by Crews. "Under our 'system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.'" *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823, 110 S. Ct. 1566, 1568 (1990) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458, 110 S. Ct. 792, 795 (1990)). "To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction." *Id.* "[W]hether State courts can exercise concurrent jurisdiction with the Federal courts in cases arising under the Constitution, laws, and treaties of the United States, has been elaborately discussed, . . . but the result of these discussions has, in our judgment, been, . . . to affirm the jurisdiction, where it is

not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case." *Claflin v. Houseman*, 93 U.S. 130, 136, 23 L. Ed. 833 (1876). The Eighth Circuit similarly has held that state courts may consider federal claims and federal Constitutional issues. *See Middleton v. McDonald*, 388 F.3d 614, 617-18 (8th Cir. 2004); *Public Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 574 (8th Cir. 2003); *Burris v. City of Little Rock*, 941 F.2d 717, 721 (8th Cir. 1991).

3. ***The holding in Kidder, Peabody & Co. v. Maxus Energy Corp. violates the "well-pleaded complaint" rule.***

Crews relies upon *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir. 1991) to support its contention that this Court has subject matter jurisdiction. In *Kidder,* Maxus Energy filed a state court action in Texas alleging state law claims of breach of contract, negligence, breach of fiduciary duty, fraud and conversion against various defendants. *Id.* at 559. The same day Maxus filed its state court action, one of the defendants, Kidder, initiated a federal court action in the Southern District of New York seeking a declaration of non-liability under sections 10(b) and 14(e) of the 1934 Act. *Id.* at 559. Maxus sought to dismiss the declaratory judgment action because it did not allege section 10(b) or 14(e) claims in the state court action and because Maxus had made previous representations to the court renouncing any intent to do so. *Id.* at 560.

The Second Circuit upheld the court's decision to deny Maxus's motion to dismiss for lack of subject matter jurisdiction and determined that there was an actual controversy amongst the parties because the declaratory judgment defendants, Maxus, had threatened to file both federal and state-law claims against the declaratory judgment plaintiffs, Kidder. *Id.* at 562. The Second Circuit did not address the "well-pleaded

complaint" rule and allowed a state court defendant to become a declaratory judgment plaintiff by conjuring up federal claims where none were brought in the state court action. The Eighth Circuit, to date, has not ruled similarly to *Kidder*, and the weight of authority applies the well-pleaded complaint rule.

In addition to violating the "well-pleaded complaint" rule, the *Kidder* decision ignores the stated purpose of the Declaratory Judgment Act and is, by and large, seldom followed by courts in the Second Circuit.[2] The plain language of the Declaratory Judgment Act states that a declaratory judgment is appropriate only when there exists an "actual controversy within [the district court's] jurisdiction." *See* 28 U.S.C. § 2201(a). The Declaratory Judgment Act "requires that the plaintiff allege facts showing that the controversy is within the court's original jurisdiction." *Household Bank v. JFS Group,* 320 F.3d 1249, 1253 (11th Cir. 2003). The court in *Household Bank* characterized the question before the court as "whether the district court erred in dismissing this declaratory judgment action for lack of subject-matter jurisdiction, notwithstanding the existence of an **actual controversy** between the parties regarding *non-frivolous federal claims* that could be brought by the defendants in a coercive action." *Id.* at 1251

---

[2] Numerous courts within the Second Circuit have declined jurisdiction notwithstanding the holding in *Kidder. See N. Am. Airlines, Inc. v. Int'l Broth. of Teamsters, AFL-CIO,* No. 04 CIV. 9949 (KMK), 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) (holding that judicial intervention was inappropriate because it was contingent on developments that were not in existence when the action was initiated); *Dana Corp. v. Colfax Corp.,* No. 03 CIV. 7288 (DC), 2004 WL 503742, *10 (S.D.N.Y. Mar. 12, 2004) (holding the court lacked subject matter jurisdiction when the defendant had not brought or threatened to bring an action under CERCLA); *Rivera v. Salomon Smith Barney Inc.,* No. 01 CIV. 9282 (RWS), 2002 WL 31106418, *3 (S.D.N.Y. Sept. 20, 2002) (holding the court lacked jurisdiction when the defendants had not indicated an intention to enforce a contract and when the plaintiff had not filed any substantive claims); *Mini Theatres v. New Line Distribution, Inc.,* No. 98 CIV. 2997 (SHS), 1998 WL 637465 (S.D.N.Y. Sept. 17, 1998) (holding that there was no contractual relationship between the parties, and therefore there was no controversy because contingent future events may not take place as anticipated or may not come about at all); *Maryland Cas. Co. v. W.R. Grace & Co.,* No. 88 CIV. 2613 (JSM), 1996 WL 109068 (S.D.N.Y. Mar. 12, 1996) (holding that jurisdiction was not appropriate when plaintiff's possible future environmental liability was speculative).

(emphases added). This assures federal jurisdiction is exercised only where the dispute is real.

There is not an actual controversy between the parties regarding section 10(b) because the Bond Funds and Pacific's well-pleaded complaint does not assert a section 10(b) claim – or even a common law fraud claim. In fact, Crews acknowledges it is seeking a declaration that any section 10(b) claim brought by the Bond Funds and Pacific *would* be subject to dismissal for failure to state a claim.

### C. This Court Should Abstain from Exercising Federal Question Jurisdiction.

Crews concedes that the Eighth Circuit has adopted the "first-filed" rule, which gives priority to "the first court in which jurisdiction attaches." *See* Crews' Opposition at 30 (citing *Northwest Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993); *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)). *See also Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 503 n.2 (8th Cir. 1999). Crews asserts, however, that jurisdiction did not attach until all parties were served with process, that this was accomplished in this suit before it occurred in the state court suit, and thus this suit is the first-filed suit. *See* Crews' Opposition at 30 (citing *Shotzman v. Berumen*, 213 S.W.3d 13, 19 (Ark. 2005)). Although Crews is correct, as a general matter, that service of process confers a court with jurisdiction over a party, this rule does not govern when jurisdiction "attaches" in the context of the first-filed rule.

*Orthmann*, the Eighth Circuit decision that announced the first-filed rule, cited the decision of *Hospah Coal. Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982), for the principle that "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann*, 765 F.2d at 121. The *Hospah* court literally applied the

rule as a first-**filed** rule, and it expressly rejected the notion that a second-filed case

trumps the first-filed case even if the second case has its defendants served first:

> Both parties recognized the general rule that when two courts have
> concurrent jurisdiction, the first court in which jurisdiction attaches has
> priority to consider the case. The parties disagree, however, as to where
> jurisdiction first attached. TUC and Chaco contend that the Texas court
> obtained jurisdiction first because the complaint was filed in that court
> prior to the filing of the complaint in the New Mexico court. Hospah, SFI,
> SFR and SFM contend that because service of process was accompanied
> first in the New Mexico action, jurisdiction attached first in the New
> Mexico court.
>
> . . . "[I]n both *in rem* and *in personam* actions, jurisdiction relates
> back to the **filing** of the complaint." The rule that jurisdiction relates back
> to the **filing** of the complaint gives effect to Fed.Rules Civ.Proc. rule 3, 28
> U.S.C.A., which provides that, "[a] civil action is commenced by filing a
> complaint with the court." Accordingly we must hold that jurisdiction
> over the parties and issues herein attached first in the Texas district court.

*Hospah*, 673 F.2d at 1163 (emphases added) (citations omitted). Other courts within the

Eighth Circuit have recognized this rule as well. *See, e.g.*, *Twin Cities Gaming Supplies,*

*Inc. v. FortuNet, Inc.*, No. 09-2290 ADM/JJK, 2010 WL 391294 (D. Minn. Jan. 25,

2010); *Marietta Campbell Ins. Group, LLC v. Jefferson-Pilot Life Ins. Co.*, No. 2:07-CV-

32, 2007 WL 3197311 (D.N.D. Oct. 26, 2007). And other courts have recognized that

this interpretation is the majority rule within the Eighth Circuit. *See Ill. Blower, Inc. v.*

*Deltak, L.L.C.*, No. 04C0341, 2004 WL 765187 (N.D. Ill. Apr. 7, 2004).

Using filing, rather than service, also makes sense given that plaintiffs are allowed

120 days to serve defendants under both Federal Rule of Civil Procedure 4(m) and

Arkansas Rule of Civil Procedure 4(i). A first-filed suit still is given priority even if

service of process is made earlier in a second-filed suit because to hold otherwise would

disregard the plaintiff's right in the first suit to accomplish service as much as 120 days

later. Filing is the bright line, and in this instance, the Bond Funds and Pacific's state

court suit was filed before this one. Comity requires this Court to defer to the state court suit.

The Bond Funds and Pacific have established that the state court suit is indeed the first-filed suit. Crews neglects to mention that a corollary of the first-filed rule is that the court of the first filing is the court that should decide which of the two actions should proceed. In this instance, the state court should make this determination, and not this Court.

In *Northwest Airlines*, 989 F.2d at 1003, one party filed a declaratory judgment action in federal court in Minnesota, and six weeks later the other party filed an enforcement action in federal court in Texas. After motions were filed in both courts, neither court would yield jurisdiction to the other. *Id.* at 1004. Finally, the plaintiff in the first-filed Minnesota action filed a motion to enjoin the other party from proceeding with its Texas action. *Id.* The Minnesota court granted that motion pursuant to the first-filed rule, and the Eighth Circuit affirmed. *Id.* at 1007. Further, the Eighth Circuit explained that the court that had the first-filed action is the one that has the ability to enjoin parties from proceeding in the other action, and thus it is the proper court to consider which court should proceed in the first place. *Id.* at 1004. The Eighth Circuit disagreed with a Fourth Circuit Court of Appeals decision, *Ellicott Machine Corp. v. Modern Welding Co.*, 502 F.2d 178 (4th Cir. 1974), in which each competing court had denied motions to transfer the other action to the other court, and the first-filed court then enjoined the plaintiff of the second-filed suit from proceeding with that suit, but the Fourth Circuit reversed the district court's ability to restrain action in the second-filed suit. *Id.* at 1006. The Eighth Circuit stated:

> [W]e do not find *Ellicott* persuasive. As a practical matter, by denying the forum of the first-filed action the ability to enjoin prosecution of the second-filed action, merely because the forum of the second-filed action has denied a motion to transfer, *Ellicott* disserves judicial economy and opens up a potential for conflicting rulings as two separate courts grapple with the same controversy. This totally unnecessary and potentially confusing duplication of judicial effort is precisely what the first-filed rule is calculated to avoid.

*Id.* There currently are competing motions to dismiss in the state court action filed by the Bond Funds and Pacific and in this suit, albeit on different grounds. But the first-filed rule gives the state court — where suit was first filed — priority to consider the competing arguments raised by the parties.

Other courts have agreed with this rule of priority. For example, in *Daimler-Chrysler Corp. v. General Motors Corp.*, 133 F. Supp. 2d 1041, 1041 (N.D. Ohio 2001), a declaratory judgment action was filed in a federal district court in Indiana, and a coercive suit was filed afterward in federal court in Ohio. When the Ohio court was considering a motion to dismiss, it decided to stay the case before it in order to let the first-filed suit proceed. *Id.* at 1044. The Ohio court cited with approval a Southern District of New York case that found the court of the first filing is the proper court to decide whether the first case should have priority or whether special circumstances dictate that the second-filed case should proceed instead. *Id.* at 1042 (citing *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County*, 542 F. Supp. 1317, 1320 (S.D.N.Y. 1982)). Thus the court found, "I am firmly persuaded that the most appropriate approach is for the court where a complaint is first filed to determine which case should go forward." *Id.* The court also noted, "I have found no case in which a court that has considered the issue has concluded that the second-filing court should — as I have been

called to do — arrogate that decision to itself." *Id.* at 1044. The court also stated that

this rule is grounded in good policy:

> Leaving the decision of the first to file dispute to the court in which the first case was filed makes good sense; as it establishes a bright line, which is as easy to apply as it is to understand.
>
> In addition, this approach prevents the kind of derivative forum shopping in which the defendants are engaging with their effort to have me decide the propriety of their first-filed declaratory judgment action.

*Id.*

Here, this Court should, if not outright dismiss this action for lack of subject

matter jurisdiction; at the very least stay this action in favor of the first-filed state court

suit because the first-filed court is the proper court to consider which of the two suits

should proceed.

Additionally, it is without question that this Court may defer to a first-filed **state**

court suit. The United States Supreme Court approved of a federal court declaratory

judgment action deferring to a first-filed state court suit in *Brillhart v. Excess Insurance

Co. of America*, 316 U.S. 491, 62 S. Ct. 1173 (1942). The Supreme Court also approved

of a **first-filed** federal declaratory judgment action deferring to a second-filed state court

action in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214

(1995), as federal courts have no duty to assume jurisdiction over declaratory judgment

actions under the terms of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). And as

Crews notes, the Eighth Circuit has held that a federal court declaratory judgment action

may defer to a first-filed state court suit in *Royal Indemnity Co. v. Apex Oil Co.*, 511 F.3d

788 (8th Cir. 2008). Crews latches on to *Royal Indemnity*'s statement that in order for a

federal court to abstain, the parallel state court action must present "the same issues, not

governed by federal law." Crews' Opposition at 27. Crews asserts that this abstention cannot apply in this case because Crews' action seeks a declaratory judgment regarding federal securities law. But *Royal Indemnity* quoted the *Brillhart* case for that statement, and the *Brillhart* Court was not setting forth a requirement or a limitation of this abstention rule. The Supreme Court simply was noting the absurdity of a second-filed suit filed in federal court proceeding when a state court suit on the same issues was already pending, particularly when there were only state law claims at issue in that case:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495, 62 S. Ct. at 1175-76. Further, the Supreme Court in *Wilton* left open the possibility that federal courts may defer to state courts on federal claims and issues as well, noting, "[w]e do not attempt at this time to delineate the outer boundaries of [a court's] discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings." *Wilton*, 515 U.S. at 290, 115 S. Ct. at 2144. Crews asserts that courts may only abstain from exercising jurisdiction if there is a parallel state court action that presents the same issues, not governed by federal law, between the parties. *Response,* p. 27. The Bond Funds and Pacific agree. Simply put, the Bond Funds and Pacific make no federal law claims against Crews and it is inappropriate for Crews to demand a determination on a federal law claim Crews bootstrapped to a claim under the Declaratory Judgment Act to create federal question jurisdiction.

Crews cites the decision of *Verizon Commc'ns, Inc. v. Inverizon Int'l, Inc.*, 295 F.3d 870 (8th Cir. 2002) as an example of a federal court declaratory judgment action not being stayed when that action raises a federal question that is not present in the parallel state court suit. *See* Crews' Opposition at 27-28. The *Verizon* case is easily distinguishable from this one. *Verizon* dealt with a first-filed federal declaratory judgment action, which sought a ruling that there had been no violations of the federal Lanham Act patent law or of corresponding state statutes, while the second-filed state court suit expressly stated it was not seeking relief under federal law. 295 F.3d at 873-74. First, unlike this case, the federal court suit was allowed to proceed in part because it was the first-filed suit: "[W]hile not dispositive, it is relevant that Verizon filed its declaratory judgment action first." *Id*. Second, the court expressly found there **was** a justiciable controversy regarding Lanham Act violations at the time Verizon filed its federal declaratory judgment action, noting that such a federal cause of action was "of prime importance in Inverizon's cease and desist letter [which had been sent just five weeks before Verizon filed its suit], which referenced the state antidilution statutes as a secondary concern." *Id*.

In this case, this suit was filed **second**, after the Bond Funds and Pacific filed their state court enforcement action. Moreover, the Bond Funds and Pacific have never asserted any federal securities violations against Crews. Such a cause of action simply has never been at play in this dispute. It has been manufactured by Crews. A prime consideration of the first-filed rule is judicial efficiency, and the same is true of abstention pursuant to *Wilton*: "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to

considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288, 115 S. Ct. at 2143. How can it be judicially efficient for this Court to consider a discretionary declaratory judgment action when all issues, which involve state law claims, already are being asserted in a previously filed state court action, and the only other ruling sought from this Court by Crews is a determination that Crews is not liable under federal securities laws, which are claims that never have been asserted in the first place? Crews' suit is the very definition of inefficient.

### CONCLUSION

Crews has not made any legitimate showing that this Court has subject matter jurisdiction. A declaratory judgment action need not be based on claims already asserted in litigation between the parties, but it does have to arise from a justiciable, actual controversy between the parties. Crews should not be allowed to manufacture a federal controversy to support federal question jurisdiction.

Even if this Court were to find a basis for federal question jurisdiction it should still abstain from exercising jurisdiction and should dismiss this action. Declaratory judgment actions are not well suited to resolve fact-dependent tort claims. Such claims are better handled in an ordinary suit. If this court were to exercise jurisdiction, the parties could litigate their claims fully to judgment in this federal forum just to have the decision overturned on appeal on subject matter jurisdiction grounds. The interests of judicial economy weigh in favor of permitting the parties to litigate the state law claims in state court.

Finally, this Court is required to defer to the first-filed state court suit based on the first-filed rule and on abstention doctrines. To do otherwise would violate rules of

comity, would deprive the Bond Funds and Pacific of their choice of forum and of their well-pleaded complaint, and would be a waste of judicial resources.

The Motion to Dismiss should be granted.

Dated this 29th day of September, 2010.

Respectfully Submitted,

EMERSON POYNTER, L.L.P.

/s/ **Scott E. Poynter**
Scott E. Poynter
The Museum Center
500 President Clinton Avenue, Suite 305
Little Rock, AR 72201
Telephone: (501) 907-2555
Fax: (501) 907-2556

DAVIS & CERIANI, P.C.

/s/ **Michael P. Cillo**
Michael P. Cillo (Petition for Admission To Be Filed)
Melissa J. Hessler (Petition for Admission To Be Filed)
1350 Seventeenth Street, Suite 400
Denver, CO 80202
Telephone: (303) 534-9000
Facsimile: (303) 534-4618

-and-

SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.

s/ **James M. Garner**
JAMES M. GARNER (E.D. Ark. Bar No. 19589)
JOHN T. BALHOFF, II (E.D. Ark. Bar No. 24288)
JENNIFER M. HOFFMAN (E.D. Ark. Bar No. 32503)
909 Poydras Street, Twenty-eighth Floor
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the Reply in Support of Plaintiffs' Motion to Dismiss was served by electronic mail through the ECF filing service to the following parties on September 29th, 2010.

| | |
|---|---|
| Stephen Engstrom, Esq.<br>Gary D. Corum, Esq.<br>Nate Coulter, Esq.<br>Shirley Jones, Esq.<br>Wilson, Engstrom, Corum & Coulter<br>200 River Market Avenue, Suite 600<br>Post Office Box 71<br>Little Rock, Arkansas 72203<br>E-mail: shirley@wecc-law.com;<br>nate@wecc-law.com;<br>gary@wecc-law.com;<br>stephen@wecc-law.com | Richard C. Stanley, Esq.<br>Jennifer L. Thornton, Esq.<br>Stanley, Reuter, Ross, Thornton &<br>Alford, LLC<br>909 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70112<br>E-mail:rcs@stanleyreuter.com;<br>jlt@stanleyreuter.com |

 /s/ Anna K. Cillo_____
Anna K. Cillo